United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 03, 2024

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 19-36300 |
| WALKER COUNTY HOSPITAL | § | |
| CORPORATION, | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |
| | § | |
| WALKER COUNTY HOSPITAL | § | |
| CORPORATION, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 22-3099 |
| | § | |
| SHANNON L. BROWN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

    This dispute concerns whether Allied World Specialty Insurance Company breached its contractual obligations to Shannon L. Brown, a former CEO of Walker County Hospital Corporation (the "Hospital Corporation"), for refusing to provide Brown insurance coverage under a directors' and officers' liability insurance policy issued in the Hospital Corporation's favor. After the Hospital Corporation's bankruptcy estate sued Brown for alleged unlawful actions he took during his tenure as CEO, Brown brought a cross-claim against Allied World for breach of contract and a declaration that Allied World is required to defend him in this adversary proceeding. Brown moves for judgment on the pleadings, arguing that there is no factual dispute precluding a finding that he is entitled to coverage under the insurance policy. Allied World moves to dismiss, arguing that Brown has not stated a plausible allegation that he is entitled to coverage. The gravamen of the dispute

is whether Allied World was entitled to deny coverage on the basis of an insured v. insured exclusion in the policy.

Because there is a bankruptcy exception to the insured v. insured policy exclusion, the exclusion itself does not apply to the written demands for compensation sent by the Hospital Corporation's bankruptcy estate and the suit filed after the commencement of the bankruptcy case. Allied World is obligated to provide coverage for the demand letters and this adversary proceeding under its policy.

## BACKGROUND

### I.   FACTUAL BACKGROUND

The Hospital Corporation operates a non-profit community hospital in Huntsville, Texas. Case No. 19-36300, ECF No. 15 at 3. Shannon L. Brown served as the Hospital Corporation's chief executive officer from 2013 to February 28, 2018. ECF No. 1 at 3.

#### A.   The Insurance Policy

Allied World issued a Forcefield Healthcare Organizations Management Liability Package insurance policy (the "Policy") to the Hospital Corporation for a policy period from July 1, 2017, through July 1, 2018, and a discovery period from July 1, 2018, through July 1, 2021. ECF No. 13-2 at 2, 125. The Policy contains directors' and officers' liability coverage. The section providing D&O coverage states:

> The Insurer shall pay on behalf of any Insured Person the Loss arising from a Claim, first made during the Policy Period (or Discovery Period, if applicable) against such Insured Person for a Wrongful Act, and reported to the Insurer in accordance with Section V. of the General Terms and Conditions, unless the Company is required or permitted to pay such Loss to or on behalf of the Insured Person as indemnification.

ECF No. 13-2 at 60.

The Policy defines a "Claim," in relevant part, as any "written demand for monetary, non-monetary or injunctive relief made against an Insured," and any "judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an Insured, including any appeal therefrom, which is commenced by . . . service of a complaint or similar pleading[.]" ECF No. 13-2 at 63.

A "Insured" is defined under the Policy as "the Company and any Insured Person." ECF No. 13-2 at 67. The Policy defines "Company" as "the Named Insured," "any Subsidiary of the Named Insured," and "the Named Insured or Subsidiary as a debtor, a debtor-in-possession or equivalent status." ECF No. 13-2 at 51. The Hospital Corporation is the Named Insured. ECF No. 13-2 at 2. "Insured Person" is defined under the Policy to mean, in relevant part, any "Executive." ECF No. 13-2 at 67. "Executive" is defined, in relevant part, as any "past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers of the Company." ECF No. 13-2 at 66. The parties agree that Brown is an Executive and Insured Person under the Policy. The Policy defines a "Wrongful Act" with respect to an Insured Person as "any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an Insured Person in his or her capacity as such, or any matter claimed against an Insured Person by reason of his or her status as such." ECF No. 13-2 at 70.

The Policy contains a number of exclusions to coverage. ECF No. 13-2 at 71–73. Relevant to the dispute is the following insured v. insured exclusion, and the bankruptcy exception to that exclusion:

> This Coverage Section shall not cover any Loss in connection with any Claim:
>
> . . .

> H. brought by or on behalf of any Insured, provided however, that this Exclusion shall not apply to:
>
> . . .
>
> (6) any Claim brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the Company or any assignee of such trustee, examiner, receiver or similar official[.]

ECF No. 13-2 at 72.

### B.     The Demand Letters

On November 30, 2020, the Hospital Corporation's bankruptcy estate sent Brown a demand letter for payment of damages, alleging Brown breached his duties while serving as the Hospital Corporation's CEO. ECF No. 13-3. The Estate alleged that "actions [Brown] took while Chief Executive Officer of [the Hospital Corporation] were breaches of [Brown's] contractual responsibilities to [the Hospital Corporation], as well as breaches of [Brown's] fiduciary and other duties to [the Hospital Corporation]." ECF No. 13-3 at 3. According to the Estate, beginning in March 2016, Brown caused the Hospital Corporation to enter into agreements with lab operators, who would perform lab services and bill them under the Hospital Corporation's provider number, resulting in third-party insurance companies paying the Hospital Corporation for services it did not render. ECF No. 13-3 at 3. The Estate asserted that Brown did not inform nor seek approval from the Hospital Corporation's board for the agreements. ECF No. 13-3 at 3.

After terminating the agreements, the Hospital Corporation allegedly entered into settlement agreements with the private insurance companies at a cost of over $2.5 million. ECF No. 13-3 at 3–4. The Estate demanded Brown pay $3 million to compensate the Estate for the Hospital Corporation's losses to the insurance companies, costs of investigation, and damages caused by Brown's allegedly fraudulent conduct. ECF No. 13-3 at 5.

On March 24, 2021, the Estate sent a second demand letter to Brown. ECF No. 13-4. The second letter alleges that, in addition to the damages in the Estate's first letter, the Hospital Corporation also suffered losses because multiple insurance companies refused for months to reimburse the Hospital Corporation for lab services until the matter was settled. ECF No. 13-4 at 3. The letter asserts that these circumstances put enormous financial strain on the Hospital Corporation, sparking a liquidity crisis contributing to the Hospital Corporation's bankruptcy filing. ECF No. 13-4 at 3.

Brown tendered the demand letters to Allied World for coverage under the Policy.

### C.  The Coverage Position Letters

On June 3, 2021, Allied World sent a reservation of rights letter to Brown in response to his tender of the demand letters. ECF No. 13-5. The letter provided Allied World's preliminary coverage evaluation and advised that Allied World reserved its right to limit or disclaim coverage for the demand letters on various grounds, including the Policy's insured v. insured exclusion. ECF No. 13-5 at 6. The letter also informed Brown that Allied World retained "Thompson Coe" to defend Brown's interests in the dispute, subject to the reservation of rights. ECF No. 13-5 at 8–9.

On November 19, 2021, Allied World sent a letter to Brown advising him that the insured v. insured exclusion bars coverage for the demand letters and that Allied World would be withdrawing from its defense. ECF No. 13-6 at 2–3.

## II.   PROCEDURAL BACKGROUND

On November 11, 2019, the Hospital Corporation commenced a bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Case No. 19-36300, ECF No. 1; 11 U.S.C. § 301.

The commencement of the case automatically created a bankruptcy estate. 11 U.S.C. § 541(a). The estate is a separate legal entity that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re RE Palm Springs II, L.L.C.*, 106 F.4th 406, 412 n.2 (5th Cir. 2024) (quoting 11 U.S.C. § 541(a)(1)); *In re Herberman*, 122 B.R. 273, 278–79 (Bankr. W.D. Tex. 1990).

The Hospital Corporation is the debtor-in-possession of the bankruptcy estate pursuant to §§ 1101 and 1107 of the Bankruptcy Code.

### A.  The Adversary Proceeding

The Estate (acting through the debtor-in-possession) and the Official Committee of Unsecured Creditors commenced this adversary proceeding on March 25, 2022. ECF No. 1. The joint complaint states four claims for relief. The first claim for relief alleges that Brown breached his duty of obedience to the Hospital Corporation by acting beyond the scope of his authority by effectively selling the Hospital Corporation's provider number to third party laboratory service companies. ECF No. 1 at 4–5. The second claim for relief alleges that Brown breached his duty of loyalty to the Hospital Corporation by entering into various lab agreements in order to inflate the Hospital Corporation's financial numbers for Brown's personal benefit. ECF No. 1 at 5. The third claim for relief alleges that Brown breached his duty of due care to the Hospital Corporation by negligently or intentionally failing to seek appropriate advice and counsel prior to entering into the laboratory agreements. ECF No. 1 at 5–6. The fourth claim for relief alleges that Brown is liable for his negligent conduct in entering into the laboratory agreements. ECF No. 1 at 6.

Brown tendered the complaint to Allied World on April 25, 2022. On May 3, 2022, Brown filed his cross-claim against Allied World. ECF No. 8. The cross-claim asserts two claims for relief. The first claim for relief alleges that Allied World breached its obligations under the Policy

by failing to provide Brown a defense to the claims asserted in the Estate's demand letters. ECF No. 8 at 5. The second claim for relief seeks a declaration that, under the terms of the Policy, Allied World is required to provide Brown with a defense for this adversary proceeding. ECF No. 8 at 5–6.

Allied World must provide coverage for both the demand letters and the adversary proceeding.

On July 22, 2022, Allied World filed a motion to dismiss the cross-claim. ECF No. 13. Allied World argues that the Policy's insured v. insured exclusion permits Allied World to deny Brown's claimed coverage. ECF No. 13 at 11–17. On July 26, 2022, Brown filed a motion for judgment on the pleadings. ECF No. 15. Brown claims that the insured v. insured exclusion does not apply to the demand letters and adversary proceeding, obligating Allied World to provide the demanded coverage. ECF No. 15 at 12–16.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

The Court reviews motions under Federal Rule of Civil Procedure 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, the Court will not strain to find inferences favorable to the plaintiff. *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Motions to dismiss for failure to state a claim upon which relief can be granted "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). To avoid dismissal under Rule 12(b)(6), the plaintiff must provide sufficient factual matter to state a claim for relief that is plausible on its face when accepting that factual matter as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard asks for more than "a sheer possibility that the defendant acted unlawfully." *Id.*; *see Lormand*, 565 F.3d at 232 ("[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))).

Fed. R. Civ. P 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion brought pursuant to Federal Rule of Civil Procedure 12(c) should be granted if there is no issue of material fact and if the pleadings show that the moving party is entitled to judgment as a matter of law." *Van Duzer v. U.S. Bank Nat. Ass'n*, 995 F. Supp. 2d 673, 683 (S.D. Tex.), *aff'd*, 582 F. App'x 279 (5th Cir. 2014) (quoting *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir.1973)). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss for failure to state a claim." *Id.* "The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiffs, and draw all reasonable inferences in the plaintiffs' favor." *Id.* "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain." *United States v. 0.073 acres of land, more or less, situate in Pars. of Orleans & Jefferson, Louisiana*, 705 F.3d 540, 543 (5th Cir. 2013) (quoting *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313

F.3d 899, 904 (5th Cir. 2002)). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.* (quoting *Brittan Commc'ns Int'l Corp.*, 313 F.3d at 904).

## DISCUSSION

Insurance policies are construed using ordinary rules of contract interpretation. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). "When doing so, courts must 'determin[e] the parties' intent as reflected in the terms of the policy itself.'" *Id.* (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009)). "Courts must 'examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless.'" *Id.* (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)). "[W]e assign terms their ordinary and generally accepted meaning unless the contract directs otherwise." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). "If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law." *Id.*

Texas courts follow the "eight corners" rule in determining whether a liability insurance company has a duty to defend under an insurance policy. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 745 (5th Cir. 2011), *certified question answered*, 370 S.W.3d 377 (Tex. 2012). "The eight corners rule requires that the 'four corners' of the complaint must allege facts that could possibly assert a claim within the scope of coverage in the 'four corners' of the insurance policy." *Id.* "Texas law instructs that '[t]he eight corners rule is to be applied liberally in favor of the insured, with any doubts resolved in favor of the insured. If *any* allegation in the complaint is *even potentially* covered by the policy then the insurer has a duty to defend the insured.'" *Id.* (quoting *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir.2004)). "If the petition potentially includes even one covered claim under the policy, the insurer must defend the entire lawsuit." *Id.* "However, if the insurer can show that *all* of the alleged liability falls outside of the scope of coverage or within the scope of an exclusion, the insurer has no duty to defend." *City of Coll. Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 336–37 (5th Cir. 2013).

"In assessing whether the allegations in a complaint fall within the scope of an exclusion, a reviewing court must interpret the complaint liberally and construe the exception narrowly, resolving any ambiguity in favor of the insured." *City of Coll. Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 337 (5th Cir. 2013). "[W]hen the language of a policy is susceptible to more than one construction, the 'polic[y] should be construed strictly against the insurer and liberally in favor of the insured.'" *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Mins. Corp.*, 1 F.3d 365, 369 (5th Cir. 1993) (quoting *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)). "If the insured proffers a reasonable interpretation of the exclusion favorable to coverage, a reviewing court *must* accept it, even if the insurer proffers an interpretation negating coverage that is 'more reasonable or a more accurate reflection of the parties' intent.'" *City of Coll. Station, Tex.*, 735 F.3d at 337–38 (quoting *Lexington Ins. Co. v. Nat'l Oilwell NOV, Inc.*, 355 S.W.3d 205, 213 (Tex. Ct. App. 2011)).

The initial burden is on the insured to establish coverage under an insurance policy. *Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). If the insured meets this burden, then the insurer must prove that a policy exclusion applies. *Id.* If the insurer proves that an exclusion applies, the burden shifts back to the insured to prove an exception to exclusion. *Id.* "Whether an insurer is obligated to defend an insured is a question of law for the court to decide." *Colony Nat'l Ins. Co. v. United Fire & Cas. Co.*, 677 F. App'x 941, 944 (5th Cir. 2017).

## I. THE PARTIES DO NOT DISPUTE BROWN'S ENTITLEMENT TO COVERAGE UNDER THE POLICY'S D&O PROVISION

The parties do not dispute that the Estate's demand letters and this adversary proceeding fall under the Policy's D&O coverage provision. The coverage provision provides:

> The Insurer shall pay on behalf of any Insured Person the Loss arising from a Claim, first made during the Policy Period (or Discovery Period, if applicable) against such Insured Person for a Wrongful Act, and reported to the Insurer in accordance with Section V. of the General Terms

and Conditions, unless the Company is required or permitted to pay such Loss to or on behalf of the Insured Person as indemnification.

ECF No. 13-2 at 60.

The parties agree that Brown, as a former executive of the Hospital Corporation, is an Insured Person under the Policy. The Estate's demand letters seeking $3 million in connection with Brown's actions as CEO, and the Estate's and Creditors' Committee's complaint seeking money damages for the same conduct, constitute "Claims" within the meaning of the D&O provision. ECF No. 13-2 at 63. The demand letters and complaint are premised on Brown's alleged breaches of duties to the Hospital Corporation, which constitute "Wrongful Acts." ECF No. 13-2 at 70. Allied World also does not dispute that the Claims arose during the policy or discovery period and that Brown performed all reporting requirements necessary to obtain coverage.

The demand letters and adversary proceeding fall within the language of the Policy's D&O provision. Absent an applicable exclusion, Allied World is required to provide Brown coverage under the Policy.

## II. THE INSURED V. INSURED EXCLUSION DOES NOT APPLY TO THE DEMAND LETTERS AND ADVERSARY PROCEEDING

Brown's claim that the Policy's insured v. insured exclusion does not apply to the demand letters and adversary proceeding rests on two grounds. Brown first argues that, because the Claims were brought by the Hospital Corporation as debtor-in-possession, the demand letters and adversary proceeding fall under the exclusion exception permitting coverage for suits brought by "a bankruptcy or insolvency trustee, examiner, receiver or similar official for the Company." ECF No. 15 at 13–14. Brown's second argument is that the insured v. insured exclusion does not apply to the adversary proceeding because the suit was brought jointly by the Hospital Corporation and Creditors' Committee, and the Creditors' Committee is not an Insured under the Policy. ECF No. 15 at 14–16.

The Policy's insured v. insured exclusion and bankruptcy exception provide:

> This Coverage Section shall not cover any Loss in connection with any Claim:
>
> . . .
>
> H. brought by or on behalf of any Insured, provided however, that this Exclusion shall not apply to:
>
> . . .
>
> (6) any Claim brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the Company or any assignee of such trustee, examiner, receiver or similar official[.]

ECF No. 13-2 at 72.

Because the Hospital Corporation is an Insured under the Policy, the insured v. insured exclusion would bar coverage for any written demands or suits brought by or on behalf of the Hospital Corporation against Brown. ECF No. 13-2 at 72. Brown does not contest this fact. Rather, Brown alleges that the Hospital Corporation's current status as debtor-in-possession necessitates a different result. According to Brown, because a debtor-in-possession is akin to a bankruptcy trustee, the demand letters and adversary proceeding fall under the exclusion exception permitting coverage for "any Claim brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the Company." ECF No. 15 at 13.

Brown relies on *In re HA 2003, Inc.* in support of his argument. 310 B.R. 710 (Bankr. N.D. Ill. 2004). In *Ha 2003, Inc.*, the court found that because a bankruptcy trustee and debtor-in-possession have similar roles under the Bankruptcy Code, the debtor's suit against the insured defendant fell under a bankruptcy exception to the insured v. insured exclusion in the insurance policy at issue. *Id.* at 717–18.

In *Ha 2003, Inc.*, the bankruptcy exception provided that the insured v. insured exclusion did not apply to "a claim (whether or not brought in the name of, on behalf of, or in the right of the Insured Organization) brought by or on behalf of a bankruptcy trustee, magistrate or any other person appointed by a bankruptcy court or judge, or authorized under applicable law to act on behalf of a debtor or brought by or on behalf of any creditor of the Insured Organization." *Id.* at 715. The court found that § 1107(a) of the Bankruptcy Code provides a debtor-in-possession with all the rights, powers, functions, and duties of a bankruptcy trustee. *Id.* at 717. Additionally, "Bankruptcy Rule 6009 provides that 'with or without court approval, the trustee or debtor-in-possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.'" *Id.* (quoting Fed. R. Bankr. P. 6009). Based on these provisions, the court found that a suit by the debtor-in-possession against the insured defendant fell within the bankruptcy exception's language permitting suits by those "authorized under applicable law to act on behalf of a debtor." *Id.*

The Court agrees with the reasoning in *Ha 2003, Inc.* The insured v. insured exclusion precludes coverage for a Claim brought by or on behalf of the Company, while the bankruptcy exception permits coverage for a Claim "brought or maintained by or on behalf of a bankruptcy or insolvency trustee . . . or similar official for the Company." ECF No. 13-2 at 72. Both a "debtor" and "debtor-in-possession" are included within the definition of the Company. ECF No. 13-2 at 51. The bankruptcy exception thus permits coverage for a Claim brought by or on behalf of a bankruptcy trustee or similar official for a debtor or debtor-in-possession.

As the *Ha 2003, Inc.* court found, Bankruptcy Rule 6009 authorizes both a trustee and debtor-in-possession to bring actions and proceedings on behalf of a debtor's estate. Section 1107(a) of the Bankruptcy Code also provides the debtor-in-possession with all the powers, functions, and duties of a bankruptcy trustee. Accordingly, the Bankruptcy Code vests in a debtor-in-possession the authority of a bankruptcy trustee, and, like a trustee, it permits a debtor-in-possession

to act on behalf of a debtor's estate. Because a debtor-in-possession has substantially the same authority as a bankruptcy trustee, it must be a "similar official" to a bankruptcy trustee under the insured v. insured exclusion's bankruptcy exception. 11 U.S.C. § 1107(a) (emphasis added) ("**[A] debtor in possession shall have all of the rights**, other than the right to compensation under section 330 of this title, and powers and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, **of a trustee serving in a case under this chapter**.").

      The Policy may have an ambiguity. On the one hand, the debtor-in-possession is clearly defined by the Policy to be the Company. Under this reading, a Claim by a debtor-in-possession would fall under the Policy's insured v. insured exclusion as a Claim by the Company. On the other hand, a debtor-in-possession is a similar official to a bankruptcy trustee and is thereby authorized under the Policy's bankruptcy exception to bring a Claim on behalf of a "debtor." By using these terms without precision, the Policy never considers what happens when a claim is brought by an entity acting for the Estate, the legal owner of the claim.

      Texas law is clear that ambiguities in an insurance policy must be construed against the insurer and in favor of the insured. *Evanston Ins. Co.*, 645 F.3d at 745; *City of Coll. Station, Tex.*, 735 F.3d at 337–38. The more reasonable interpretation is that the insured v. insured exclusion's bankruptcy exception acts to permit coverage for suits in bankruptcy by fiduciaries acting on behalf of a debtor's estate. This interpretation is better supported by the Bankruptcy Code, where bankruptcy trustees and debtors-in-possession are authorized to perform nearly identical functions on behalf of the estate. The Hospital Corporation as debtor-in-possession, like a bankruptcy trustee, serves as the operating fiduciary of the Hospital Corporation's estate, which is a distinct legal entity. *See* 11 U.S.C. § 1107(a); *RE Palm Springs II, L.L.C.*, 106 F.4th at 412 n.2; *Indian Harbor Ins. Co. v. Zucker for Liquidation Tr. of Capitol Bancorp Ltd.*, 860 F.3d 373 (6th Cir. 2017) ("The bankruptcy estate is a nominal entity that cannot act on its own; it needs a debtor in possession or trustee to sue on its behalf."). Part of the Hospital Corporation's powers as the Estate's fiduciary is the ability

to "commence and prosecute any action or proceeding in behalf of the estate." Fed. R. Bankr. P. 6009. The Hospital Corporation sending the demand letters and commencing this adversary proceeding are actions performed pursuant to this function. An exception that permits coverage for a trustee to take an action while excluding coverage for a debtor-in-possession taking the exact same action would ignore § 1107 of the Bankruptcy Code.

This interpretation is also supported by the policy behind the insured v. insured exception. An insured v. insured exception "prevent[s] both collusive suits between business organizations and their directors and officers as well as actions arising out of the 'bitter disputes that erupt when members of a corporate . . . family have a falling out.'" *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 895 (Tex. 2017) (quoting *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 168 F.3d 956, 958 (7th Cir. 1999)). These considerations are not present here. The Estate alleges that Brown breached his fiduciary duties to the Hospital Corporation, ultimately leading to losses that contributed to the Hospital Corporation's bankruptcy filing. The adversary proceeding seeks to litigate these breaches for the benefit of the Estate, with recovery ultimately going toward the benefit of creditors.

Allied World cites cases that held a debtor-in-possession and the pre-bankruptcy company are the same entity for purposes of an insured v. insured exclusion. *See In re R.J. Reynolds*, 315 B.R. 674, 679 (Bankr. W.D. Va. 2003) ("A pre-petition debtor is the same entity as a debtor-in-possession, but a debtor-in-possession is not the same entity as a chapter 11 trustee."); *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 671 (9th Cir. 2009) ("We conclude that for purposes of the insured versus insured exclusion, the prefiling company and the company as debtor in possession in chapter 11 are the same entity."); *Indian Harbor Ins. Co.*, 860 F.3d at 378 ("A lawsuit by Capitol as debtor in possession on behalf of the bankruptcy estate remains a lawsuit 'by' Capitol and thus would still fit within the insured-versus-insured exclusion.").

The insured v. insured exclusions in these cases did not contain a bankruptcy exception. *R.J. Reynolds*, 315 B.R. at 677; *Biltmore Assocs., LLC*, 572 F.3d at 666; *Indian Harbor Ins. Co.*, 860 F.3d at 375. *Indian*

*Harbor* held only that a liquidating trust, as a voluntary assignee of claims, brings suit on behalf of a debtor-in-possession and therefore falls under the insured v. insured exclusion. *Indian Harbor Ins. Co.*, 860 F.3d at 378. In reaching its conclusion, the court carefully excluded the situation that presents in this case:

> In truth, because the exclusion also applies to claims "in the . . . right of" Capitol, it's not even clear that a court-appointed trustee or creditor's committee could collect on the policy. But today's decision does not resolve that distinct question. On the one hand, one might think that any suit alleging a breach of fiduciary duty to Capitol is "in the right of" Capitol and therefore excluded. If the parties meant to cover these lawsuits after bankruptcy, they could have included an exception for suits brought by bankruptcy trustees or creditor's committees, just as they included an exception for derivative shareholder suits. On the other hand, one might say that the exclusion does not apply because the breach-of-fiduciary-duty claim became property of the bankruptcy estate the moment that Capitol filed for bankruptcy, meaning a court-appointed trustee or creditor's committee would sue "in the name or right of" the estate, not Capitol as debtor in possession. *See In re Cent. La. Grain Coop., Inc.*, 467 B.R. 390, 398 (Bankr. W.D. La. 2012). We need not take sides on this debate today.

*Id.*

Similarly, the court in *R.J. Reynolds* dealt with the issue of whether a post-confirmation trust, as the debtor-in-possession's assignee of claims, is precluded by an insured v. insured exclusion while recognizing the possibility that a court-appointed trustee may have coverage for asserting those same claims. *R.J. Reynolds*, 315 B.R. at 677–80. And in *Biltmore*, the court only dealt with the issue of whether a debtor-in-possession acts in the same capacity as the pre-bankruptcy company under an insured v. insured exclusion for the purpose of determining whether a post-bankruptcy creditors' trust may recover on claims under the insurance policy. *Biltmore Assocs., LLC*, 572 F.3d at

667–71. These cases did not deal with the issue of whether a debtor-in-possession and Creditors' Committee that sue on behalf of a debtor's estate fall within a bankruptcy exception to an insured v. insured exclusion.

The insured v. insured exclusion is overridden by the bankruptcy exception. Allied World, by denying coverage for the demand letters and this adversary proceeding, breached its insurance contract. The Court need not reach the issue of whether the presence of the Creditors' Committee would affect the outcome.

## CONCLUSION

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED 10/03/2024

Marvin Isgur
United States Bankruptcy Judge